UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| TERRY GIESE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 14-126-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| COMMUNITY TRUST BANK, INC; | ) | **ORDER** |
| INTERNATIONAL COAL GROUP, | ) | |
| INC.; and LEXINGTON COAL | ) | |
| COMPANY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

The underlying dispute in this case centers on the question of who is entitled to the contents of an account containing royalty payments made on mineral leases.  Those leases provided Leslie Resources the right to mine land that is now owned by Plaintiff Terry Giese, but was previously owned by the Begley family.  Leslie Resources made the royalty payments that funded the account, and when Leslie Resources went into bankruptcy, the Defendants bought the disputed account from the bankruptcy estate. Plaintiff now sues the Defendants for the contents of that account.  In so doing, the Plaintiff both directly and indirectly challenges the propriety of the bankruptcy proceeding.  Presently at issue is the subject matter jurisdiction of this Court.  For the reasons set forth below, jurisdiction exists and so Giese's motion to remand will be **DENIED**.

**I**

Leslie Resources, Inc. mined coal in Leslie County, Kentucky in the 1990's.  Like many coal companies, Leslie Resources did not own all the land from which it mined, but instead leased their mineral rights from other landowners.  The heirs of Emitt Begley (Emitt, himself, died in 1936) owned one of the tracts of land that produced the royalties in the account that is central to the current dispute.  [R. 1-1 at 2.]  Proceeds from Leslie Resources' mining operations were deposited into this account at Citizens Bank and Trust in Hazard, Kentucky.[1]  [R. 1-1 at 5.]  In 2000, Leslie Resources distributed some of the money in the account to landowners but a significant amount of the money remained in the account.  As of May 26, 2006, the account had $334,054.11.  [R. 1-1 at 6.]

Leslie Resources and a number of its affiliates filed for Chapter 11 bankruptcy in November 2002.  [R. 1-1 at 6.]  The bankruptcies were consolidated into a case styled *In re Horizon Natural Resources Company,* Case No. 02-14261 (Bankr. E.D. Ky.) and the above mentioned escrow account was listed as an asset of the bankruptcy estate.  [R. 14 at 3; 14-1.]

Defendants International Coal Group (ICG) and Lexington Coal purchased assets out of the bankruptcy, including all "cash and cash equivalents" which included such agreements as Leslie Resources had with the "Emitt Begley Heirs."  [R. 1-1 at 6.] Defendants' purchase was approved by the bankruptcy court.  [*See* R. 14-3; R. 14-5.] Later, the bank attempted to distribute the contents of the account but there was a dispute amongst the Defendants as to how the money was to be distributed.  To resolve this dispute, the bank filed an adversary proceeding before the bankruptcy court, styled

---

[1]     The title of the account included the word "escrow," although the Defendants represent it was a checking account as opposed to an "escrow account."  [R. 14 at FN2.]  This distinction is unimportant for purposes of the motion at hand.

*Community Trust Bank, Inc. v. Berman, et. al.,* Case No. 06-01022 (Bankr. E.D. Ky.). [R. 14 at 5.] As a part of that proceeding, the Court attempted to provide notice to "E. Begley" (the name that was on the account documents) through publication in the newspaper. [*Id.*] There was no response and, as a result, the bankruptcy court concluded that no person or entity besides ICG and Lexington Coal had an interest in the Account. [*Id.*] The bankruptcy court subsequently entered default judgment against "E. Begley," which cut off his claims to any interest in the account. [R. 14-6.] Eventually the Defendants agreed as to how the money should be distributed amongst themselves and on December 19, 2006, the bankruptcy court entered an order distributing the funds amongst Lexington Coal and ICG. [R. 14 at 6.]

Plaintiff, Terry Giese, acquired real property from the heirs of Emmit Begley in the late spring and summer of 2009 and then again in July 2013. [R. 1-1 at 3-4.] Giese believes that in purchasing the land, he also acquired rights to royalties from the Leslie Resources leases. He filed suit in Leslie Circuit Court to collect those royalties, alleging state law claims for conversion, breach of fiduciary duty, negligence, fraudulent and negligent misrepresentation, breach of contract, and unjust enrichment. [R. 1-1.] Because the principal question before this Court is how closely related these claims are to the former bankruptcy action, it is worth going into a little more detail about these causes of action.

In count one (collection of royalties), Giese asserts he is "legally entitled to the proceeds that were in the Escrow Account," which contains pre-petition royalties and was purchased by the Defendants through the bankruptcy. [R. 1-1 at 8.] Count two (conversion) asserts that the above account was taken without the consent of the Begleys.

3

[*Id*. at 9.]  Count three (breach of fiduciary duty) asserts that the Defendants owed a duty to the Begleys and breached that duty when they failed to effectively notify them of their ownership interest in the account.  [*Id.*]  Count four (negligence) and count five (negligent misrepresentation) charge the Defendants with being negligent in searching for and ensuring that the royalty proceeds were paid to the owners of the account.  [*Id*. at 10-11.]  Count six (breach of contract) asserts that the Defendants, as heirs, successors, or assigns of Leslie Resources, breached lease contracts by failing to pay mineral royalties.  [*Id*. at 11-12.]  Count seven (unjust enrichment) alleges that the Defendants "inequitably retained the benefit of the escrow account funds without payment for their value."  [*Id*. at 13.]

The Defendants timely removed the case to Federal Court on the basis that this case is related to the earlier bankruptcy proceeding, and that jurisdiction is proper in accordance with 28 U.S.C. § 1334(b).  Giese argues it must be remanded because the issues raised are not sufficiently related to the bankruptcy.

## II

## A

"A party may remove any claim or cause of action in a civil action…to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  28 U.S.C. § 1452.  The Defendants assert that jurisdiction arises out of Section 1334 which provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  This section addresses four categories of cases "over which the district

court has jurisdiction: (1) "cases under title 11," (2) "proceedings arising under title 11," (3) proceedings "arising in" a case under title 11, and (4) proceedings "related to" a case under title 11." *In re Wolverine Radio Co.*, 930 F.2d 1132, 1141 (6th Cir. 1991). Because the first category ("cases under title 11") only refers to the actual bankruptcy proceeding initiated with the filing of a bankruptcy petition, *see id.*, the Court need only consider whether jurisdiction exists per one of the latter three categories.

The "second, third, and fourth categories (proceedings "arising under," "arising in," and "related to" a case under title 11)... operate conjunctively to define the scope of jurisdiction." *Id.* (*citing In re Wood,* 825 F.2d 90, 92 (5th Cir. 1987); *see also In re Stewart*, 62 F. App'x 610, 613 (6th Cir. 2003).[2] As such, the real question when considering whether § 1334(b) jurisdiction exists is "whether a matter is at least 'related to' the bankruptcy." *Id.* (*citing In re Wood,* 825 F.2d at 93.) This inquiry has been well explained by the Sixth Circuit:

> The definition of a "related" proceeding under Section 1334(b) was first articulated by the Third Circuit in *Pacor.* As stated in that case, the "usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether **the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy**." *Pacor,* 743 F.2d at 994. An action is "related to bankruptcy if the outcome **could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate**." *Id.* A proceeding "need not necessarily be against the debtor or against the debtor's property" to satisfy the requirements for "related to" jurisdiction. *Id.* However, "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b)]." *Id.* (stating also that "[j]udicial economy itself does not justify federal jurisdiction"). Instead, "there must be some nexus between the 'related' civil proceeding and the title 11 case." *Id.*

---

[2]      This consolidated analysis must be broken back up if the Court is considering the question of abstention.  At this juncture, however, the inquiry is consolidated as described above.

*In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996) (emphasis added).

Federal courts are courts of limited jurisdiction, so normally any doubts regarding federal jurisdiction are construed in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–109 (1941); *Cole v. Great Atlantic & Pacific Tea Co.,* 728 F.Supp. 1305, 1307 (E.D.Ky. 1990) (citations omitted). However, when considering whether jurisdiction exists in the context of bankruptcy, Courts approach jurisdiction differently, by broadly construing what it means to be "related." *In re Wolverine Radio Co.*, 930 F.2d at 1141. Congress intended such an expansive reading so that bankruptcy courts "'might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" *In re Dow Corning Corp.*, 86 F.3d at 489 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995)). The language used in the test makes this intention clear:

> A key word in [the] test is "conceivable." Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on "the debtor's rights, liabilities, options, or freedom of action" or the "handling and administration of the bankrupt estate."

*In re Dow Corning Corp.*, 86 F.3d at 491 (*citing In re Marcus Hook Dev. Park Inc.,* 943 F.2d 261, 264 (3d Cir.1991) (citation omitted)); *see also In re Stewart*, 62 F. App'x at 613. Such "related" proceedings might include "suits between third parties which have an effect on the bankruptcy estate." *Id.* (quoting *Celotex Corp.*, 514 U.S. at n. 5.) However, if there is only "an extremely tenuous connection to the estate [, it] would not satisfy the jurisdictional requirement." *Robinson v. Michigan Consol. Gas Co. Inc.,* 918 F.2d 579, 583 (6th Cir. 1990).

The question for this Court is whether this action could conceivably "alter the

debtor's rights, liabilities, options, or freedom of action (either positively or negatively)"
or could otherwise impact "the handling and administration of the bankrupt estate." *In re
Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996) (quoting *Pacor,* 743 F.2d at 994)
(quotations marks omitted).  Because the answer to this question is "yes," the case will
not be remanded.

**B**

According to Giese, "[t]he only real connection [between the bankruptcy case and
this action] is that ICG and Lexington Coal purchased assets and liabilities of Leslie
Resources during the liquidation of Leslie Resources' parent company."  [R. 12-1 at 5-6.]
He asserts this connection between his complaint and the bankruptcy case is too tenuous
to trigger federal jurisdiction but Giese's claim that this proceeding "will not affect any
debtor" because "there are no claims against Horizon, Leslie Resources, or their related
entities" oversimplifies the inquiry.  [R. 16 at 2.]  The fact that no claim exists against a
debtor is not necessarily determinative of whether jurisdiction exists.  *See In re Dow
Corning Corp.*, 86 F.3d at 489 (quoting *Pacor,* 743 F.2d at 994.) ("A proceeding 'need
not necessarily be against the debtor or against the debtor's property' to satisfy the
requirements for 'related to' jurisdiction.")

The Defendants spend considerable time explaining why jurisdiction exists under
each of the three respective prongs and these distinctions are important for purposes of
determining whether abstention is appropriate.  At this juncture, however, the Court's
analysis will be focused on the singular question of whether this "matter is at least
'related to' the bankruptcy."  *In re Wolverine Radio Co.*, 930 F.2d at 1141 (*citing In re
Wood,* 825 F.2d at 93.)  Because the Court is convinced for a number of reasons that this

7

case is related to the bankruptcy proceeding, it will not be remanded but will be referred

to the bankruptcy court for further proceedings.

First, there is a very real question as to whether the Plaintiff is permitted to bring

this suit or is enjoined from doing so.  In a September 16, 2004 Sale Order, the

bankruptcy Court transferred the disputed assets to the Defendants without liabilities or

encumbrances and then enjoined future suits.  *See* R. 14-2 (Sale Order).  Relevant

passages from that Order are reprinted below:

> M.  Upon the Closing of each Agreement, the sale and transfer of the relevant Purchased Assets to the applicable Purchaser shall be a legal, valid and effective transfer of such Purchased Assets to such Purchaser, and shall vest in such Purchaser all right, title and interest in the applicable Purchased Assets in accordance with the terms and conditions of the relevant Agreement free and clear of any Encumbrances, under sections 105(a), 363(f) and 365 of the Bankruptcy Code.
>
> N. Except as expressly set forth in Section 2.3 of each Agreement, none of the Purchasers shall have any liability for any (i) obligation of the Debtors, or (ii) any Claim against the Debtors related to the applicable Purchased Assets by reason of the transfer of such Purchased Assets to such Purchaser. None of the Purchasers shall be deemed, as a result of any action taken in connection with the purchase of the applicable Purchased Assets or otherwise, to: (1) be a successor to the Debtors (other than with respect to the applicable Assumed Liabilities and any obligations arising under the relevant Assumed Agreements from and after the applicable Closing); or (2) have, de facto or otherwise, merged with or into the Debtors. None of the Purchasers is acquiring or assuming any liability, warranty or other obligation of the Debtors, except as expressly set forth in the relevant Agreement and any of the relevant Assumed Agreements.

[*Id*. at 6-7 (Sale Order).]  Furthermore, the Sale Order contained the following language

enjoining future actions:

> [A]ll persons and entities are forever prohibited and enjoined from commencing … any action … against the relevant Purchaser, its successors and assigns, or the relevant Purchased Assets, with respect to any (a) Encumbrance arising under, out of, in connection with or in any way relating to the Debtors, the applicable Purchased Assets, the operation of such Purchased Assets prior to the Closing of the sale of such Purchased Assets…

8

[R. 14-2 at 14 (Sale Order).]  *See also* R. 14-4 at 17-18 (Confirmation Order).

Second, the Bankruptcy Court's Order explicitly "retain[ed] jurisdiction over the transactions contemplated in the Agreements for purposes of enforcing the provisions of this Order and the Agreements."  [R. 14-2 at 23 (Sales Order).]  It is well established that a Bankruptcy Court has continuing jurisdiction to interpret and enforce its own prior orders.  *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

Third, legal issues relating to the bankruptcy court's orders and the propriety of its proceedings will inevitably be central to this case.  As Defendants contend, the Plaintiffs' claims will be "*determined by* a statutory provision of title 11" because Plaintiffs claims challenge actions that were authorized by Title 11 and the bankruptcy Court.  [*Id*. at 14 (*citing In re Wolverine Radio Co.,* 930 F.2d at 1144)(emphasis added).]  Notably, the Court that hears this case will have to consider the validity and enforceability of the Bankruptcy Court's sale and confirmation orders.  The Defendants make this point in their briefing.  They suggest that Giese will have to prove errors occurred during the bankruptcy proceedings if he is to prevail, and provide the following examples. [*See* R. 14 at 13-17.]  Count two charges the Defendants with converting the contents of the escrow account belonging to the Begleys, but the Defendants only came to own that account because they purchased it out of the bankruptcy estate.  To attack the propriety of the Defendants' ownership interest in that account, the Plaintiff has no option but to challenge the very mechanism that gave Defendants that ownership interest.  Again, in count four, Giese asserts that the Defendants' search to determine the owner of the property was not diligent and that the published notice to "E. Begley" was unreasonable. These processes were all overseen by the bankruptcy court and the Defendants had no

interest in the account until they acquired it through the bankruptcy court's previously discussed Sale Order.  [R. 14 at 16-17.]

Finally, the outcome of this suit could conceivably "alter [Leslie Resource's] rights, liabilities, options, or freedom of action" or at least impact "the handling and administration of the bankrupt estate." *In re Dow Corning Corp.*, 86 F.3d at 489 (quoting *Pacor,* 743 F.2d at 994) (quotations marks omitted).  First, as Defendants argue, if Giese convinced a Court that the Bankruptcy sales did not effectively transfer the account, the funds would have to be returned to the estate and then re-administered.  [R. 14 at 21.] Second, if Giese won, then the Defendants would have reason to seek compensation from the debtor/bankruptcy estate as they purchased the account but would be left without it. [R. 14 at 21.]  Both of these scenarios are "conceivable."

In his reply, Giese cites to two instances where district courts have remanded cases because they could have no conceivable impact on the debtor.   Those cases are both distinguishable.  In *Richland Manor House*, the Court considered whether a factually distinct case should be remanded to the State Court where it was originally filed.  2014 WL 809208 (N.D. Ohio Feb. 21, 2014).  The Court concluded that the "state law claims clearly existed outside of bankruptcy" because the suit arose prior to the bankruptcy.  *Id*. at *3.  That circumstance does not exist here.  In *Spradlin v. Pikeville Energy Group, LLC,* the Plaintiff filed a second amended complaint, and the bankruptcy court determined that it lacked subject matter jurisdiction over the amended complaint. 2012 WL 6706188 (E.D. Ky. 2012).  The Plaintiff appealed that decision, but the district court determined that the bankruptcy court was correct--- the Plaintiff had been hoist, not by its own petard, but, by its own amendment.  *Id*. at *1.  If anything can be taken from

*Spradlin,* another factually dissimilar case, it is that this case belongs in the hands of the Federal Courts. In *Spradlin,* one of the primary reasons that no jurisdiction existed was because the estate had "nothing to lose" since the prosecution of the state-law claims in that case "would not expose the Estate to any potential liabilities." *Id.* at *8. The Court explicitly noted that none of the defendants had plausible counterclaims against the Estate that could create jurisdiction. *Id.* In this case, such counterclaims and cross-claims do potentially exist. Defendants have made it clear that if a judgment was entered against them, then they would promptly turn around and sue the estate. [*See* R. 14 at FN 10 ("ICG and Lexington Coal would have a claim against the estate for breach of the purchase agreement due to the failure of a material term.")]

This conclusion is also consistent with the bankruptcy statutes' policy considerations that weigh in favor of maintaining jurisdiction in this circumstance. Allowing this case to proceed in State Court could potentially deal a serious blow to the finality that is so critical to bankruptcy proceedings. It was Congress' intention that federal bankruptcy jurisdiction be broadly construed so as to ensure that bankruptcy courts "'might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" *In re Dow Corning Corp.*, 86 F.3d at 489 (quoting *Celotex Corp.*, 514 U.S. at 308). Allowing this case to proceed in state court would also encourage creditors who miss their opportunity to state a claim to assets during the bankruptcy proceeding to take a second bite at the apple, despite the intended finality.

### III

Having determined that this Court does have subject matter jurisdiction, the Court will refer this case to the bankruptcy court who is better equipped to confront the pending

arguments on abstention and to address all further issues as consistent with the referral power in 28 U.S.C. § 157. *See McKinstry v. Sergent*, 442 B.R. 567, 572 (E.D. Ky. 2011) (After determining that jurisdiction existed, Court referred case to bankruptcy court to consider "the plaintiff's non-jurisdictional argument that the Court must abstain under 28 U.S.C. § 1334(c)(2) from hearing the state law claims."); *see also Robinson,* 918 F.2d at 584 ("Mandatory abstention under section 1334(c)(2) is not jurisdictional[.]"); Fed. R. Bankr.P. 5011, Comment (b) ("The bankruptcy judge ordinarily will be in the best position to evaluate the grounds asserted for abstention.").

Accordingly, having determined that this Court has jurisdiction over this case, the Defendant's motion to remand [R. 12] is **DENIED** and this case shall be **REFERRED** to the bankruptcy court for further proceedings. The remaining pending motions [R. 19, 20] will be **DISMISSED WITHOUT PREJUDICE** and may be re-raised before the bankruptcy court.

This 31st Day of March, 2015.



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**